When we stated in our decree that all legal costs are to be paid by appellant we did not intend to convey the idea that the appellant was to pay any costs that the law exempts it from paying.

There is no merit in the other questions :raised in the application for rehearing.

97 So.2d 415

W. F. TAYLOR, Jr., et al.

v.

Joe W. DUNN et al.

W. F. TAYLOR, Jr., et al.

v.

Clyde R. MINOR, Jr., et al.

No. 43166.

June 28, 1957.

Rehearing Denied Oct. 8, 1957.

Jackson, Smith, Mayer & Kennedy, Hargrove, Guyton, Van Hook and Hargrove, Shreveport, for defendants-appellants.

Cook, Clark, Egan, Yancey & King, Shreveport, for plaintiffs-appellees.

FOURNET, Chief Justice.

The plaintiffs,[1] alleging that on October 31, 1936, W. F. Taylor Company, Inc., a Louisiana corporation domiciled at Shreveport and owner of Cedar Croft Plantation consisting of some 1,500 acres of land in Caddo Parish, sold the plantation to Clyde R. Minor, reserving in the sale an undivided half mineral interest, and that they,

---

1. William F. Taylor, Jr., Mrs. Nell Taylor Boggs, widow of W. Kyle Boggs, and Mrs. Amanda Taylor Ford, wife of Frank H. Ford.

the plaintiffs, as successors in title of W. F. Taylor Company, Inc.,[2] on October 1, 1946, granted an oil, gas and mineral lease covering their said half interest in favor of Atlas Oil and Refining Corporation, which commenced drilling operations on Cedar Croft Plantation on October 19, 1946, drilled with due diligence to a depth of approximately 3,000 feet and finally abandoned the well as a dry hole on November 4, 1946, and that said lease was still a valid and existing lease upon the property, filed two petitory actions against the present owners of Cedar Croft[3] who, it is said, deny the existence and validity of petitioners' mineral servitude. They prayed to be recognized the true and lawful owners of a mineral servitude affecting half of the minerals in and under and upon Cedar Croft Plantation, and for judgment quieting them in their possession and enjoyment of same.

For answer, similar in the two cases, the defendants averred that the drilling operations did not constitute a bona fide attempt to obtain production of minerals in paying quantities, but were merely an attempt to interrupt the running of prescription liberandi causa—which ten year prescription under provisions of the Civil Code of Louisiana was specially pleaded by the defendants. The Minors, further answering in the alternative, averred that a road which divides the plantation into two sections was the result of two dedications made by the W. F. Taylor Co., Inc. before the sale to Minor;[4] that said dedications. to public use "constituted transfers in fee simple to the strips of land described,"

2. On December 30, 1936, the W. F. Taylor Company, Inc., acting through Frank H. Ford, its duly qualified Liquidator, transferred and conveyed all of the assets formerly owned by the said Company to Mrs. Genevieve Gray Taylor, widow of W. F. Taylor, and to the Taylor children, Mrs. Nell Taylor Evans (who later became Mrs. Boggs), Mrs. Amanda Taylor Ford and William F. Taylor, Jr., in the proportion of one-half to the widow and one-sixth to each of the children. Upon the death of Mrs. Genevieve Gray Taylor, which occurred shortly thereafter, her above-named children, as sole heirs, were recognized and sent into possession as owners, in equal proportions, of her property, including her interest in the servitude at issue in this suit.

3. In the first suit, filed May 13, 1955, the named defendants were Joe W. Dunn, Jack R. Dunn and Eugene F. Dunn; in the second suit, filed March 8, 1956, those made defendants were the heirs of Clyde R. Minor, deceased, namely, his widow, Mrs. Audrey N. Minor, and Clyde R. Minor, Jr. and Edwin C. Minor. Plaintiffs concede that the Dunns own title to part of the plantation and that the Minors (Mrs. Minor actually resides at Cedar Croft) own such part as is not owned by the Dunns; and that title to the mineral interest not claimed by them, the plaintiffs, is in the various named defendants.

4. The first dedication, made by instrument dated May 15, 1917, granted "A right of way 60 feet wide, 30 feet on each side of the center line of the proposed Greenwood-Bethany Road;" the second, by instrument dated December 9, 1929, widened the strip to 100 feet. The road forms part of Louisiana State Highway No. 203 and U. S. Highway No. 79.

thus having the effect of dividing the servitude retained by W. F. Taylor Co., Inc., into two separate and distinct mineral servitudes, so that the drilling of the well on one portion of Cedar Croft did not have the effect of interrupting the ten year liberative prescription running against the mineral servitude affecting the other. Defendants in both cases prayed for trial by jury on the issues, and on joint motion of all parties the cases were ordered consolidated for purposes of trial and were set for June 7, 1956. On that date, when the cases were called, exception of non-joinder of indispensable parties was filed by each defendant group, as well as motions for a continuance; and these having been argued, submitted and overruled, trial on the merits was had, resulting in the jury's verdict "for the plaintiffs and against the defendants, as prayed for." Separate judgments were rendered in which the trial judge adopted the jury's verdict, and accordingly the plaintiffs were recognized to be the true and lawful owners of half of the minerals in, under and to be produced from the therein described property, with the right of ingress and egress for proper development of same. The defendants have appealed, specifying as error the trial court's (a) holding that drilling was conducted in good faith; (b) failure to recognize that two separate servitudes resulted from the reservation by W. F. Taylor Co.; (c) overruling of defendants' Exceptions of Non-joinder of Indispensable Parties; (d) failure to grant their Motion for a Continuance; and (e) exclusion of certain testimony offered by defendants.

The appellants, in support of their contention that the drilling operations were not conducted in good faith, argue that those operations were carried on under the direction of a Special Committee which had been set up by Atlas Oil and Refining Corporation solely for the purpose of spending some three-quarters of a million dollars to avoid the payment of excess profits taxes, and were undertaken without regard to the prospects of discovering minerals in paying quantities; as proof thereof, defendants claim that the record shows the only lease acquired by Atlas Oil and Refining Corporation in the area around the plantation, although supposedly an area approved by the Committee as suitable for development purposes, was the lease of Cedar Croft itself—covering, however, only an undivided half interest in the minerals; the drill site, although first located on the west side of the highway, on the smaller portion of the plantation, was moved, without explanation, over to the very much larger east side, and located on the extreme northern edge of the property, offset on three sides by unleased acreage; that drilling operations were begun nineteen days after execution of the lease, and only twelve days before the servitude would have expired; that numerous wells had

previously been drilled in the surrounding area to a depth sufficient to test the horizon to which this well was completed, and Atlas-Minor No. 1 well was surrounded by numerous dry holes, nothing having been found in any of those wells which would give hope or encouragement in the selection of that location.

■ Defendants' argument that "drilling operations under a lease covering only an undivided mineral interest do not constitute sufficient use of the servitude to interrupt prescription" is clearly without merit. Huckabay v. Texas Company, 227 La. 191, 78 So.2d 829. In that case we held that the lessee of fractional mineral rights had an absolute right to go upon and develop the property, independent of the holder of the remaining fractional mineral interest, "the only limitation being that if minerals are found, the finder is entitled to take only his share; * * *." 227 La. at page 197, 78 So.2d at page 831.

■ We think a fair appraisal of the evidence does not support appellants' contention of lack of good faith on the part of Atlas Oil & Refining Corporation in the drilling of the well; on the contrary, we think the evidence is most convincing that these operations were conducted in good faith, and fully warranted the jury's verdict for the plaintiffs. It is shown that it was common practice among oil companies, when they had enjoyed a profitable and successful year, to undertake a search for oil reserves, devoting to the project money which would otherwise have to be paid to the government as excess profits taxes; that in the year 1946 Atlas Oil and Refining Corporation, having profits of some three quarters of a million dollars, decided to spend the amount in developing fields for oil and gas. The so-called Paluxy sands occur in the general area of North Louisiana with which we are here concerned, being found at a depth of from 2,500 to 3,000 feet, and Paluxy was a known producing horizon, so an exploratory program to discover reserves of oil and gas in the Paluxy sands was started by Atlas. To implement the program it secured the services of several men respected and experienced in the oil business, men outstanding in their professions of geologist or independent oil producer. These men composed a Special Committee which met at regular intervals, and on the basis of geological surveys would designate an area as showing promise for development, whereupon leases would be obtained, drilling contracts would be let, a site would be chosen and actual drilling would proceed.

The record also discloses that in developing the program, Atlas drilled or participated in drilling about thirty wells, these being located all over North Louisiana, some in Texas and some in Mississippi; a total of three wells were drilled in the

Greenwood area, of which Atlas-Minor No. 1 was one, all having been drilled to a depth sufficient to test the Paluxy formation. While there was no way to determine before the well was drilled whether the Paluxy sands were present, or, if present, whether they would be productive, since the sands come and go (yet trap the oil in pockets), nevertheless when the drilling of Atlas-Minor No. 1 was undertaken it was thought there was a good possibility of obtaining production in commercial quantities in the Paluxy zone because there had been found oil and gas in that zone northeast of the town of Greenwood, the Paluxy was a known producing area both north and south of the location in which this well was drilled, and the Paluxy sands were the nearest productive sands when Atlas Minor No. 1 was drilled in 1946.

Defendants' claim that two separate servitudes resulted from the mineral reservation by W. F. Taylor Co. because of the fact that Cedar Croft was at the time traversed by a highway, and the effect of the dedications of that strip of land was to transfer title, so that even if it should be held that the drilling of the well on one section of the plantation interrupted prescription, the servitude has become extinguished as to the other section, is not supported by the two instruments creating such roadway. The first, dated May 15, 1917, was a dedication by Mr. W. F. Taylor to the public use for a public road of "A right of way sixty feet wide," following a certain center line of the then proposed highway "as has been surveyed through Sec. 34 and Sec. 35, T. 17, R. 16;" the other instrument, dated December 9, 1929, signed W. F. Taylor Co., Inc., by its President, F. H. Ford, merely widened the strip to one hundred feet, which "strip includes the right of way now used as a public highway." The jurisprudence is well settled that the instrument as a whole must be considered in arriving at what was meant in the dedication, and that unless the deed itself evidences that the parties intended otherwise, the conveyance of a right of way is the grant of a servitude and not a transfer of title to the land. See Texas & Pac. Ry. Co. v. Ellerbe, 199 La. 489, 492, 6 So.2d 556, and cases there cited.

The defendants' exception of nonjoinder of indispensable parties is based on the legal presumption obtaining under our Civil Law that property acquired in the name of either spouse during the existence of the community belongs to the community, and that therefore the rights acquired by the children of W. F. Taylor in the mineral servitude at issue here,[5] regardless of the recitation of a purchase

5. The record reveals that the interest of the plaintiffs herein was acquired by virtue of two instruments; in the first, by notarial act dated December 30, 1936, Frank H. Ford, appearing in his capacity as Liquidator of W. F. Taylor Company

with separate and paraphernal funds, were acquired (it is said) for the benefit of and became assets of the respective communities of acquêts and gains then existing between plaintiffs and their respective spouses; and that therefore Charles D. Evans, if he be alive, or, if not alive, then his heirs or legatees, and Frank H. Ford are indispensable parties to this suit. And, as to W. F. Taylor, Jr., it is their contention that unless it be affirmatively shown there has been no change in his marital status in the interval between the date of the transfer of the servitude and the present, then Gertrude Cox is also an indispensable party.

It is elementary that every party who may be affected by a decree must be made a party to a suit, because no one should be condemned without a hearing. Heirs of Burney v. Ludeling, 41 La.Ann. 627, 6 So. 248; Succession of Todd, 165 La. 453, 115 So. 653; Commercial Nat. Bank in Shreveport v. Haas, 182 La. 504, 162 So. 57; Jamison v. Superior Oil Co., 220 La. 923, 57 So.2d 896. Under the laws of this State, all property acquired during the existence of the marriage, whether purchased in the name of the husband or the wife, is presumed to be community property (Article 2402, Louisiana Civil Code), and the jurisprudence holds that the presumption is not overcome by a mere declaration of the spouses in a deed to the wife that the latter is purchasing with her separate and paraphernal funds, under her separate administration; that "the wife, * * * to overcome the presumption in

---

Inc., acting pursuant to authority granted to him by consent of the stockholders and duly recorded in the Conveyance Records of Caddo Parish and with the Secretary of State, bargained, sold, conveyed and delivered, unto the widow of W. F. Taylor and his three children, Mrs. Nell Taylor Evans, wife of Charles D. Evans, Mrs. Amanda Taylor Ford, wife of Frank H. Ford, and William F. Taylor Jr., whose wife is Gertrude Cox, all spouses living in full community, various described tracts of real property, as well as "all of the assets of whatsoever kind and wheresoever situated * * * formerly owned by W. F. Taylor Company, Inc." The transfer was made "in consideration of the delivery and cancellation by the purchasers of all of the stock of W. F. Taylor Company, Inc., and the assumpsit by the vendees of the outstanding liabilities of W. F. Taylor Company, Inc., such assumpsit being made by the

vendees in the ratio which their interest in the property herein acquired bears to the whole property; that is to say, one-half is assumed by Mrs. W. F. Taylor and one-sixth ($\frac{1}{6}$) each by the other three vendees." That instrument was signed only by Frank H. Ford as Liquidator— none of the vendees having signed. Upon discovery that the mineral servitude at issue here had not been included in the properties described in the above instrument, a second notarial act was executed to remedy the oversight; dated April 30, 1937, it conveyed the mineral interest to the same parties in the same proportions as the former deed, the purchase being with paraphernal funds and the consideration being that expressed in the former deed. This instrument was signed by Frank H. Ford as Liquidator, by Mrs. Taylor and the three Taylor children, plaintiffs here, but not by their respective spouses either as parties or as witnesses.

favor of the community, must establish three crucial facts, namely: (1) The paraphernality of the funds; (2) the administration thereof separately and apart from her husband; and (3) investment by her." Houghton v. Hall, 177 La. 237, 244, 148 So. 37, 39; Johnson v. Johnson, 213 La. 1092, 36 So.2d 396; Succession of LeJeune, 221 La. 437, 59 So.2d 446; Stevens v. Johnson, 230 La. 101, 87 So.2d 743. The husband, as head and master of the community of acquêts and gains (Article 2404, Louisiana Civil Code), is the proper party to prosecute its rights and defend its interests, and the wife alone can neither prosecute such a claim nor defend an action against the community and stand in judgment to bind it.

Inasmuch as the record shows that the wife of William F. Taylor, Jr., is still living with him in community, she is clearly not a necessary party to this suit. With respect to Frank H. Ford and Charles D. Evans, however, the situation is different, and the point is well taken. While the record lends the impression that the subject property was actually paraphernal, yet as the purchasers of the assets of W. F. Taylor Company, Inc., assumed the debts of that company, in the absence of a showing that either Mrs. Ford or Mrs. Evans had separate funds with which to pay their share of such debts, if there were any, or that they did pay debts under their obligation with separate funds rather than community funds, and as it is not clear the

time and manner of acquisition of the stock of W. F. Taylor Co., Inc., given in consideration of their respective purchases, it necessarily follows that the presumption that the property acquired in the deeds was community property has not been overcome. Under such circumstances Mrs. Ford can neither prosecute nor stand in judgment for the community without Frank H. Ford joining her or being made a party to this suit. The fact that he executed the deeds in his capacity as Liquidator of W. F. Taylor Company, Inc., and that he testified in court disclaiming any interest in the property, cannot be the basis of an estoppel by which his forced heirs would be concluded. Louisiana Civil Code, Article 2239; Houghton v. Hall, supra, 177 La. at page 258, 148 So. at page 43, and authorities there cited. And inasmuch as the record shows that Mr. Evans died subsequent to the acquisition of the mineral servitude at issue, his widow, as the surviving widow in community, can prosecute her claim, defend the same and stand in judgment only to the extent of her half of the community interest; as to the other half it will be necessary (in the absence of a showing that the property was in fact paraphernal) to determine who are the heirs or successors of Mr. Evans, so that they may be made parties.

The defendants, anticipating that "the absence of indispensable parties may cause this case to be remanded", argue that their motion for a continuance should

have been granted to permit them an opportunity to "attempt to locate certain missing minutes of its [Atlas'] Exploration and Development Committee to see whether they threw any light on the question of whether this well was a good faith attempt to find production in paying quantities;" also, that two witnesses offered by the defendants, being the owners of land adjoining Cedar Croft Plantation, "should have been permitted to testify fully with respect to the fact that their land was unleased and no attempt was made to lease their land, so that this testimony would be available to the jury in its deliberations." There is no merit in either point. The defendants could make no showing that the minutes they seek are in existence, or as to their contents; defendants did show a diligent effort in the several months preceding trial to unearth all minutes kept by the Committee,[6] and we are impressed with the fact that the data which they did find indicated a completely honest and above-board course of conduct on the part of the Special Committee. The testimony of the owners of lands adjoining Cedar Croft, for the purpose introduced, was immaterial to the issue here.

As previously stated, from the record it appears very probable that this property is the separate property of these plaintiffs. We have therefore concluded to remand the case to the lower court for the purpose of determining the paraphernality of the interest involved. Following a hearing, should the trial judge conclude that the property is the separate property of the plaintiffs, then he is to reinstate his former judgments; and if the property is found to be community property, then he is to grant a new trial in order that all necessary parties may be joined.

For the reasons assigned, the judgments of the lower court are annulled and set aside and the cases are remanded to the lower court for further proceedings in accordance with law and not inconsistent with the views herein expressed; costs of this appeal are to be borne by the appellees; all further costs to await the final determination of this cause.

6. Atlas Oil and Refining Corporation is now defunct and its files have been removed to another State.