382 So.2d 1034 (1980)
Edward H. LOWRY et al., Plaintiffs-Appellants,
v.
MRT EXPLORATION COMPANY et al., Defendants-Appellees.
No. 14090.
Court of Appeal of Louisiana, Second Circuit.
March 31, 1980.
Rehearing Denied May 13, 1980.
Writ Refused June 23, 1980.
*1035 James H. Dawdy, Jr., Homer, for plaintiffs-appellants.
Shotwell, Brown & Sperry by James H. Napper, II and Reginald E. Cassibry, Monroe, for MRT Exploration Co., defendant-appellee.
Bodenheimer, Jones, Klotz & Simmons by David Klotz, Shreveport, for Discovery Oil Co., Inc., Robert E. Adair, Everett Enterprises, Inc., Jack T. Everett, Smackover Producing Co., Robert E. Adair, Jr., Thomas J. Adair, Rebecca Lee Griffith, William Bryan Brown, and Winifred H. Price, defendants-appellees.
Wright & Kerstein by Morris Wright and Dudley Yoedicke, New Orleans, for Anita Solomon Marx and Rae Rose Solomon Culver, defendants-appellees.
James R. Hatch, Homer, for Daniel B. Feitel, defendant-appellee.
Before PRICE, HALL and JONES, JJ.
En Banc. Rehearing Denied May 13, 1980.
PRICE, Judge.
Plaintiffs filed suit to be declared owners of all or a portion of the mineral rights in a tract of land and for an accounting of past oil and gas production. All but one of the defendants filed a motion for summary judgment which was granted by the trial court. Plaintiffs appeal and we affirm.
Prior to September 27, 1966, the property in question was owned in indivision by Arthur Feitel, Milton Feitel, and Daniel Feitel. On that date they conveyed the property to Jimmy Wayne Bottoms by an act of sale which contained the following reservation:
It is expressly understood and agreed that the VENDORS reserve unto themselves, their heirs and assigns, all of the oil, gas and other minerals lying in and under the above described property.
The property was subsequently sold on three separate occasions by deeds which contained no mention of outstanding mineral rights. Ultimately, however, plaintiffs acquired the property on May 24, 1978, by a deed with the following clause:
This sale is subject to any and all outstanding oil, gas, and mineral leases and all sales of mineral interests and/or royalties affecting the property described herein on file and of record prior to this sale.
Daniel Feitel died in 1967 and his mineral interest in the property created by the reservation in the 1966 deed to Bottoms was inherited by his brothers, Arthur and Milton. Milton died in 1969 and his interest eventually devolved to several of the defendants. On May 13, 1975, Arthur Feitel sold all his mineral interest in the property to Smackover Producing Company and Jack T. Everett.
On May 6, 1976, Smackover Producing Company and Jack T. Everett leased their interest acquired from Arthur Feitel to Smackover Producing Company. On about September 21, 1976, a well was drilled on the property. Both the sale from Arthur Feitel to Smackover and Everett and the lease to Smackover were recorded in the conveyance records prior to plaintiffs' acquisition of the property in 1978.
Plaintiffs filed this suit against Arthur Feitel, his vendees and their assignees, and the heirs of Milton Feitel seeking to be declared owners of all mineral rights in the property. This claim was based on plaintiffs' contention that the drilling operations conducted by Smackover did not interrupt the ten-year liberative prescription on the servitude created in the 1966 sale to Bottoms.
*1036 Alternatively they contended the reservation in this 1966 act of sale created three separate servitudes and consequently Smackover's activities interrupted prescription only as to the interest previously owned by Arthur Feitel. All defendants except Arthur Feitel filed a motion for summary judgment which was sustained on the ground that as a matter of law plaintiffs owned no interest in the minerals.
Although plaintiffs allege numerous errors on the part of the trial court, this case presents two principal issues: (1) whether the reservation in the 1966 deed from the Feitels to Jimmy Wayne Bottoms created a single or multiple servitudes and (2) if only a single servitude was created, did its use by one co-owner inure to the benefit of the other co-owners and thereby interrupt prescription running against their interests. In Hodges v. Norton, 200 La. 614, 8 So.2d 618 (1942), two co-owners conveyed property by a deed which reserved to them a one-half interest in the oil, gas, and other minerals. The court found that (1) this reservation created only one servitude; (2) conveyance of an undivided interest in this servitude did not have the effect of dividing it; and (3) use of this single servitude by one co-owner inured to the benefit of all other co-owners thereby interrupting prescription as to the entire servitude.
Article 174 of the Mineral Code, R.S. 31:174, provides as follows:
A use or possession of a mineral right inures to the benefit of all co-owners of the right.
Comments under this article state:
Insofar as mineral servitudes are concerned, Article 174 is a restatement of established law. See Hodges v. Norton.

Applying these principles to the present case, the reservation in the 1966 deed to Bottoms created only one servitude which was owned in indivision by Arthur, Milton, and Daniel Feitel. When Arthur Feitel sold his interest in the minerals to Smackover and Everett, they became co-owners in indivision of this servitude along with the heirs of Milton Feitel. The drilling activities conducted on the property by Smackover within ten years from the creation of this servitude interrupted prescription as to all co-owners. Therefore plaintiffs, who bought subject to all outstanding mineral rights, own no interest in the minerals in this property.
Plaintiffs also argue that due to the language in the mineral deed from Arthur Feitel to Smackover and Everett which referred to a sale of "all the oil, gas and other minerals," this instrument should be construed as an attempt to create an additional servitude which is impermissible since only a landowner may create a mineral servitude. Even though this language is commonly used by landowners to create an original servitude, it is also used to transfer an entire or fractional interest in an already existing servitude and this was the obvious intent of the parties. The sale of Feitel's undivided interest did not divide the single servitude previously created nor was it an attempt to create a new servitude. Hodges, supra.
The judgment is affirmed at appellants' costs.