PRICE, Judge.
Plaintiff, Mrs. George M. Cox, instituted this suit against defendants, Mrs. Medorah Head Sanders, Jerry Head Sanders, and Thomas A. Sanders, Jr., seeking cancellation of all servitudes affecting her property due to accrual of liberative prescription of 10 years nonuse. She further seeks damages and attorney fees because of defendant’s failure to furnish her a recordable act evidencing the extinction of these servi-tudes within 30 days after her written demand as required by La.R.S. 31:206-207. The trial court ordered cancellation of all existing servitudes affecting plaintiff’s property but rejected her claim for attorney fees. Defendants have limited their appeal to the trial court’s decision as it affects one contiguous 400 acre tract which is designated in the trial record as Servitude No. 4. In answer to this appeal, plaintiff contends the trial court erred in denying her claims for attorney fees.
The following facts giving rise to this litigation are not in controversy. In 1961 plaintiff’s husband, George M. Cox, and Mrs. Sanders’ husband, Thomas A. Sanders, Sr., as co-owners in indivisión, conveyed certain lands in two separate deeds to D’Ar-bonne Development Corporation. In 1965, Cox and the present defendants, who succeeded to Thomas A. Sanders, Sr.’s interest in the property, executed two conveyances of certain other tracts owned by them in indivisión to the same corporation. In each of the four conveyances a servitude reserving to the grantors ownership in indivisión of all the minerals was effected. In 1968, D’Arbonne reconveyed to the Coxes and defendants part of the property involved in the four earlier transactions.
*1259 In 1968, the Coxes and defendants voluntarily partitioned the lands reacquired from D’Arbonne, in addition to other lands owned in indivisión by them. The partition agreement provided that all minerals would continue to be held in indivisión by the parties.
In 1972 defendants granted a lease to GMB Gas Corporation covering their interest in the servitude under consideration on this appeal. Two wells, Cox and Sanders Wells No. 1 and No. 10, were drilled on the tract of land acquired by defendants from the partition [1] and gas production occurred from 1972 through 1977. The Coxes did not consent to this drilling and were not parties to the lease. All payments tendered to the Coxes by GMB were refused.
After Cox refused to allow GMB the right to conduct drilling operations on his land, GMB filed suit for an injunction against Cox’s interference. Cox reconvened for judgment declaring the lease invalid and for an injunction against any further drilling on any part of the tract in which he was the co-owner of the mineral servitude. This court granted Cox an injunction and declared the lease invalid in GMB Gas Corp. v. Cox, 340 So.2d 638 (La. App. 2d Cir. 1976). In 1977 defendant can-celled the lease.
Plaintiff is now the owner of all the property formerly owned by her and her late husband. After defendants refused her written demands for the cancellation of all the servitudes affecting her property, she filed this suit.
It is stipulated by both parties that no production sufficient to interrupt the running of prescription has occurred on the tracts of land burdened by servitudes which were designated at trial as Servitudes Nos. 1, 2, 3A, and 3B.
Defendants contend that a new servitude, referred to in the record as servitude No. 4, was created by the act of partition and that the production of gas from Cox and Sanders Wells No. 1 and No. 10 from 1972-1976 interrupted the running of liberative prescription.
The precise issue before us, therefore, is whether the good faith drilling of the Cox and Sanders Wells No. 1 and No. 10 under a lease granted by only one of the co-owners (Sanders) without the consent of the other co-owner (Cox) constitutes a “use” of the servitude that interrupted the running of liberative prescription.
We find the trial judge correctly analyzed and resolved this issue in well-written reasons for judgment and we quote from his opinion in part as follows:
Defendants strongly rely upon the decision in Taylor v. Dunn, 233 La. 617, 97 So.2d 415 (La.1957), holding that drilling by the lessee on a one-half mineral interest constituted sufficient use of the servitude to interrupt prescription. There the prevailing plaintiff-lessor owned in its entirety a separate fractional mineral interest, and the Court cited Huckabay v. Texas Company, 227 La. 191, 78 So.2d 829 (La.1955). In the latter case it was recognized that the lessee or owner of fractional mineral rights has an absolute right to develop the property; however, a distinction was there drawn between joint ownership of a single right as compared to two or more fractional rights which are independent of each other. See Starr Davis Oil Co. v. Webber, 218 La. 231, 48 So.2d 906 (La.1950), setting forth the same concept.
In GMB Gas Corp. v. Cox, 340 So.2d 638 (La.App. 2d Cir. 1976), this distinction was again recognized and relied upon after concluding that the partition agreement involved, which is now once more under consideration, created co-ownership of a single mineral servitude. It was determined that the lessee of such a co-owner could not conduct operations on any of the lands subject to the servitude without consent of the other co-owner.
*1260 Thus Taylor, concerning owners of separate mineral rights not co-owners of a single mineral servitude, is inapposite to the instant case. Cf. La.R.S. 31:169. . . .
Under Articles 42 and 175 of the Code, except in limited circumstances, a mineral servitude may be used only by its owner, or one acting on his behalf, and a eo-owner may not conduct operations without the consent of the other co-owner.
Except as provided in Articles 44 through 52, use of a mineral servitude must be by the owner of the servitude, his representative or employee, or some other person acting on his behalf. R.S. 31:42.
A co-owner of a mineral servitude may not conduct operations on the property subject to the servitude without the consent of the other co-owner. R.S. 31:175.
We thus conclude that drilling and production by defendants’ lessee, without the consent of plaintiff, was neither such “use” of the servitude nor good faith “operation” as would interrupt running of the prescription of nonuse, as provided by Articles 29, 36, and 41.
Defendants also contend that under Article 174 of the Code, if one co-owner acts without consent of the other, the use inures to the benefit of all co-owners. But that argument is wide of the mark. Plaintiff seeks nor claims no such benefit.
Similarly, defendant’s reliance upon Article 176 of the Code, which states:
A co-owner of a mineral servitude may act to prevent waste or the destruction or extinction of the servitude, but he cannot impose upon his co-owner liability for any costs of development or operation or other costs except out of production. He may lease or otherwise contract regarding the full ownership of the servitude but must act at all times in good faith and as a reasonably prudent mineral servitude owner whose interest is not subject to co-ownership. (Emphasis supplied)
is not persuasive.
Although, given the appropriate circumstances, a co-owner may have the right of independent action, such does not appear here. Prescription resulting from nonuse of a mineral servitude runs for ten years. LSA-R.S. 31:27. At the time of execution of the lease to GMB the servitude in question had an additional six year term of existence. Hence, defendants cannot justify their conduct as acts in good faith to prevent extinction of a mineral servitude about to expire. Secondly, it is noted that the lease, as stipulated, purported to cover only the interest of defendants, not “the full ownership of the servitude” as referred to in the above article.
Accordingly, we conclude that production from the two wells in question did not interrupt the ten-year nonuse prescription, which has now run against any and all servitudes involved. The demands of plaintiff to cancel such servi-tudes are thus granted.
We find the foregoing to be a correct application of the jurisprudence and the pertinent mineral code provisions to the circumstances here presented, and as' the trial court’s reasons coincide, with the views of this court, we adopt the above excerpts as the opinion of this court.
In argument to this court, appellants rely principally on the decisions in Hodges v. Norton, 200 La. 614, 8 So.2d 618 (1942) and Lowry v. MRT Exploration Co., 382 So.2d 1034 (La.App. 2d Cir. 1980), along with the provisions of Art. 174 of the' Mineral Code. These decisions and the referred to codal article do provide that the use of a mineral servitude by one co-owner shall inure to the benefit of all other co-owners. However, these decisions and the quoted article are only effective if the actions of the initiating co-owner are of benefit to the other co-owner and are not adverse to his best interest. This is the only construction which can give meaning to both Art. 174 and Art. 175. The fact that production was obtained and continued by GMB for a period of some three years does not constitute a legal use of the servitude under the unusual circum *1261 stances of this case. Appellee never consented to the lease or drilling thereunder, and never accepted any payment from the lease or production. Therefore, appellants should not be allowed to rely on the unauthorized exploration and production which is contrary to the statutory law.
The code provides the specific exceptions where a co-owner may act without the consent of the other (none of which are present here as pointed out by the trial court and set forth above) and these afford adequate protection from the arbitrary refusal of one co-owner to cooperate to obtain exploration under the servitude.
In addition, to prevent a “freeze out” by a combination land owner and servitude co-owner as exists here, the code provides the remedy of partition of the mineral servitude under Art. 172.
We conclude that the result reached by the trial court is one which most appropriately gives meaning to all of the provisions of the mineral code and is in substantial accord with the prior jurisprudence.
Appellees, in answer to the appeal, have requested we review the rejection of their demand for damages and attorney fees based on appellánt’s failure to furnish a recordable release of the several servitudes within thirty days of written demand as provided by La.R.S. 31:206-207.
Appellees contend the record shows there was no bona fide dispute as to expiration on the servitudes referred to at trial as Servi-tudes Nos. 1, 2, 3(A), and 3(B).
We find no manifest error on the part of the trial court in refusing appellee’s demands for this relief. The principal object of this litigation was the validity of the servitude affecting the 400 acre tract as to which this appeal was restricted. There is no evidence in the record on which we could separate the effort expended on the several servitudes which were ordered cancelled and were not made an issue on this appeal. Nor is there any evidence to show any damage from the failure to comply with the statute. We therefore find no abuse of the trial court’s action in this regard.
For the foregoing reasons, the judgment is affirmed. Cost of this appeal is assessed to appellants.

. This tract was not included in the reconveyance from D’Arbonne to plaintiff and defendant.