421 So.2d 869 (1982)
Mrs. George M. COX
v.
Mrs. Medorah Head SANDERS, Jerry Head Sanders and Thomas A. Sanders, Jr.
No. 82-C-0482.
Supreme Court of Louisiana.
October 18, 1982.
Rehearing Denied November 19, 1982.
*870 Larry Arbour, Blackwell, Chambliss, Hobbs & Henry, West Monroe, for applicant.
George M. Wear, McKeithen, Wear & Burns, Columbia, for respondents.
JOHN C. BOUTALL, Associate Justice Ad Hoc.[*]
A land owner, Mrs. George M. Cox, brought suit against the owners of an undivided interest in the mineral rights, Mrs. Medora Head Sanders, Jerry Head Sanders and Thomas A. Sanders, Jr., seeking cancellation of all mineral servitudes affecting her property, based on the accrual of the liberative prescription of ten years non-use. Mrs. Cox also seeks damages and attorney's fees because of the defendant's failure to furnish her a recordable act evidencing the extinction of the servitudes within thirty (30) days after her written demand as required by LRS 31:206-207.
The trial court ordered cancellation of all existing servitudes affecting plaintiff's property but rejected the claim for attorney's fees. The Court of Appeal, Second Circuit, affirmed, Cox v. Sanders, 409 So.2d 1257. We granted a writ of review. The basic question posed for our consideration is: Was the 10 year period of non-use of a mineral servitude, for purposes of liberative prescription, interrupted by production pursuant to one co-owner's granting of a lease, where the other co-owner in indivision was not a party to the lease and rejected all benefits from it, but is also the land owner who granted the mineral servitude?
There is no issue between the parties as to the basic facts, nearly all of them being stipulated. The Coxes and the Sanders had been having a business relationship over a considerable period of time, when differences between them arose and became irreconcilable, causing this litigation. In 1961, plaintiff's husband, George M. Cox, and Mrs. Sanders' husband, Thomas A. Sanders, Sr., as co-owners in indivision, conveyed certain lands in two separate deeds to D'Arbonne Development Corporation. In 1965, Cox and the present defendants, who succeeded to Thomas A. Sanders, Sr.'s, interest in the property, executed two other conveyances of certain other tracts owned by them in indivision to the same corporation. In each of the four conveyances a mineral servitude, reserving to the grantors ownership in indivision of all of the minerals was effected. The D'Arbonne Development Corporation was not completely successful and differences arose between the parties as to its operation. Consequently, in 1968 D'Arbonne Development Corporation reconveyed to the Coxes and the Sanders that portion of the property involved in the four earlier transactions which had not been sold to others. Several days later, on July 1, 1968, the Coxes and the Sanders voluntarily partitioned all of the lands *871 owned in indivision by them including those reacquired from D'Arbonne, each receiving land of equal monetary value, but not equal in acreage. That partition was only of the land itself and not of the minerals. As to the minerals, the parties expressly stated:
"It is understood and agreed, however, that no partition is made of the mineral interests and the parties shall continue to remain as owners in indivision with respect to the oil, gas, and other minerals in, on and under the property herein partitioned."
At this time, we should note that in the early 1960's, George Cox and Thomas Sanders had executed an oil, gas and mineral lease in favor of Cardinal Drilling Company, which lease included the land in question here. Pursuant to that lease, the Cardinal Drilling Company had drilled 10 wells on the tract which produced gas until January, 1965. This lease was terminated prior to the voluntary partition of 1968. After the partition, Sanders' successors leased their interest in the minerals to GMB Gas Corporation by act dated May 23, 1972. Cox and his wife refused to enter into any agreement with GMB as to their interest. Pursuant to this mineral lease, two wells that had previously been drilled by Cardinal on the surface of that part of the land acquired by the Sanders in full ownership in the partition were reworked and put into production from 1972 through 1977. The Coxes refused GMB permission to enter upon their portion of the land in order to rework the other eight wells which were upon the Coxes' land. It is stipulated that the Coxes had no part in the lease, continuously refused to recognize any activity thereunder and received no payment of any kind in connection therewith.
After Cox refused to allow GMB the right to conduct drilling operations on his land, GMB filed suit for an injunction against Cox's interference. Cox reconvened for judgment declaring the lease invalid and for an injunction against any further drilling on any part of the tract in which he was the co-owner of the mineral servitudes. The Court of Appeal, Second Circuit, granted Cox an injunction and declared the lease invalid in GMB Gas Corporation v. Cox, 340 So.2d 638 (La.App. 2nd Cir.1976). In 1977 the Sanders cancelled the lease with GMB.
Mrs. Cox is now the successor to all of the property and the rights formerly owned by her and her late husband. After defendants refused her written demands for the cancellation of all of the mineral servitudes affecting her property, she filed this suit. It is important to note that in this suit she is asserting her rights as a land owner against the owner of an undivided interest in a mineral servitude, and thus she is asserting rights on a different basis than those which she asserted in the prior case, GMB Gas Corporation v. Cox, supra, wherein she was asserting her rights as the co-owner of an undivided mineral servitude.
The first problem for our consideration is the applicability of the law to this case. By Act 50 of 1974 the Legislature of Louisiana enacted a Mineral Code to become effective on January 1, 1975. The Mineral Code was designed in large measure to supplant by way of codification the extensive jurisprudence that developed in this area of the law. This suit arose after the effective date of the Code, but the events which took place took place before the effective date of the Code in large measure. The Code itself provides (LRS 31:214) that the provisions of the Code shall apply to all mineral rights, including those existing on the effective date thereof, but that no provision may be applied to divest already vested rights or to impair the obligations of contracts.
In examination into the facts and circumstances of this case, as related above, show that most of the events took place in the 1960s and that the partition reserving the mineral rights of these parties took place in 1968. The lease by Sanders to GMB Gas Corporation took place in 1972 and the production from the wells was had in 1972 taking place both before and after the 1975 effective date of the Code, into 1977. The question here is whether that production interrupted prescription, and thus by the *872 effective date of the Code, the rights of the parties had already crystalized and the activity relied upon for interruption had taken place, though still continuing. Certainly if the production prior to the effective date of the Code had not interrupted prescription under the existing law, the continuing production thereafter would be of no effect. See for comparison the case of Continental Group, Inc. v. Allison, 404 So.2d 428 (La. 1981).
The Court of Appeal in its consideration of the issues discussed the prior jurisprudence and relied mainly upon the application of the Mineral Code concluding that under the Code a co-owner of a mineral servitude may not conduct operations without the consent of the other co-owner, that such use without consent of the co-owner was neither a use of the servitude nor a good faith operation which would interrupt running of the prescription of non-use as provided by Articles 29, 36 and 41. One of the judges dissented pointing out that the contest here is not really between co-owners of a single mineral servitude but between a land owner and one co-owner of the single mineral servitude and thus the articles of the Code relied upon by the majority were not applicable, and based his dissent upon the jurisprudence. The right sought to be enforced in this case, as is clearly demonstrated in the petition itself, is the right of a land owner to cancel mineral servitudes affecting his property. The servitude itself arises out of his grant as a co-owner of the land. Accordingly, we conclude that the controlling law is the pre-codal law applicable to the rights existing between land owner and mineral interest owner, and not between two mineral interest owners.
Reduced to their essence, the facts are that two owners of land, also owners of the minerals, partitioned the lands in kind but did not partition the minerals, agreeing instead "the parties shall continue to remain as owners in indivision with respect to the oil, gas and other minerals in, on and under the property herein partitioned." The effect of this is that each party received ownership of particular tracts of land burdened with a mineral servitude, and because the servitude is created by the owners of the estates upon which it is imposed, there is but a single servitude. As stated in Clark v. Tensas Delta Land Company, 172 La. 913, 136 So. 1 (La.1931), the co-owner of such a servitude owns not half the right to the minerals but the right to half of the minerals in the owner's estate. The estate owner is obliged to permit the servitude owner to go upon the land and to explore for oil, gas and other minerals and to reduce them to possession, and account to the owner of the land for half.
These principles in Clark were restated and approved in the case of Starr Davis Oil Company v. Webber, 218 La. 231, 48 So.2d 906 (La.1950). After discussion of the nature of the grant of a mineral interest by a land owner who reserved the remainder of the mineral rights, the court stated (48 So.2d 907):
"Accordingly, since plaintiff, by virtue of the grant, acquired a right to go on the land and search for minerals, it is difficult to discern how this right was owned in common with the defendant landowners. The theory of plaintiff seems to be that, forasmuch as the right to search for minerals and reduce them to possession is not exclusive in view of the fact that the defendants, as landowners, may exercise the identical right (having retained an interest to one-half of the minerals), there is a limitation on the right accorded by the grant. But this supposition is founded on a false premise, i.e., a belief that there is co-ownership of a single right to explore for minerals, when in truth plaintiff was granted a whole and unencumbered right of exploration. The only limitation in the grant is that, if minerals are found, plaintiff is entitled to take but one-half. However, this does not in any way restrict its right to explore; the real right ceded by defendants.
The contention of plaintiff is not novel; it has been heretofore raised and found to be unsound by this court. In Clark v. Tensas Delta Land Co., 172 La. 913, 136 So. 1, 2, the landowner sued ..."
*873 Similarly the court in Hodges v. Norton, 200 La. 614, 8 So.2d 618 (La.1942) pointed out that where the landowners established a servitude on one continuous tract that there was but one indivisible servitude and where drilling operations were conducted under a lease covering only an undivided mineral interest, that constituted sufficient use of the servitude to interrupt prescription. The case of Huckabay v. Texas Company, 227 La. 191, 78 So.2d 829 (La.1955) and Taylor v. Dunn, 233 La. 617, 97 So.2d 415 (La.1957) continued to maintain this principle.
Applying those principles to the facts of this case, we conclude that the Sanders were given the right by the landowner to explore and drill upon the partitioned lands and that the production obtained by the Sanders' lessee was sufficient to interrupt prescription of Sanders mineral servitude for non-use. Indeed, we note an application of the same principles of law to somewhat similar facts in the case of Lowry v. MRT Exploration Company, 382 So.2d 1034 (La.App. 2nd Cir.1980). We pass to a consideration of how much of plaintiff's land the servitude affects.
The production was not on a tract of land owned by Cox but on a tract of land owned by Sanders as a result of the partition. The parties by agreement have prepared a plat showing the boundaries of and delineating the ownership of the various tracts owned by the parties and in contention here. Some of the tracts which were partitioned by the parties are not at issue on this appeal because they are non-contiguous with the tract upon which the production was had, and the appellants have restricted their appeal to only those tracts which are contiguous to the production tract. The law was succinctly summed up in the case of Whitehall Oil Company v. Heard, 197 So.2d 672 (La.App. 3rd Cir.1967), at p. 675:
"Thus, for instance, a landowner cannot create a single servitude or mineral royalty right on two or more non-contiguous tracts; and if this is attempted by a single instrument, there are nevertheless as many servitudes or royalty interests as there are non-contiguous tracts of land. Continental Oil Company v. Landry, 215 La. 518, 41 So.2d 73; Calhoun v. Ardis, 174 La. 420, 141 So. 15; Lee v. Giauque, 154 La. 491, 97 So. 669. On the other hand, there is no limitation in the area or configuration of a contiguous mineral interest. Gulf Oil Corp. v. Clement, 239 La. 144, 118 So.2d 361; Lenard v. Shell Oil Co., 211 La. 265, 29 So.2d 844 (80,000 acres)."
Thus it follows that the interruption of prescription applied not only to the tract owned by Sanders upon which production was had but also upon the contiguous tracts owned by Cox. This includes the contiguous lands north of the Tennessee Gas pipeline as outlined on the plat as it is not separated by a non-owned strip. See Hunter Company, Inc. v. Ulrich, 200 La. 536, 8 So.2d 531 (La.1942).
Accordingly we hold that the judgment of the trial court and its affirmance by the Court of Appeal, Second Circuit, are in error insofar as those lands involved in the appeal are concerned, and we reverse the judgment of the trial court, in part, which ordered the cancellation of all mineral servitudes, and it is now ordered, adjudged and decreed that there be judgment in favor of the defendants, Mrs. Medora Head Sanders, Jerry Head Sanders and Thomas A. Sanders, Jr., and against Mrs. George M. Cox recognizing that the mineral servitude owned by the defendants on the following described lands has not been extinguished by prescription and dismissing plaintiff's suit for cancellation as follows:
A certain 400 acre tract of land in Ouachita Parish, Louisiana, described on a plat of J.C. Crawford, Civil Engineer, dated April, 1967, entitled "Plat Showing Property of George Cox and Tommy Sanders in Sections 8, 9, 13 & 25, T18N-R3E, Ouachita Parish, Louisiana" and filed in these proceedings identified as "P-10", and which tract is described thereon as follows:
1) All of the land north of the Tennessee Gas Pipeline (except that 12.41 acre tract labeled "Benton Moore");

*874 2) The lands south of and contiguous to the Tennessee Gas Pipeline, which land is uncolored, bordered in green and has a bold printed "T-9" in the middle of said tract;
3) The land south of and contiguous to the Tennessee Gas Pipeline, on the westerly edge of the plat, which land is colored YELLOW with ORANGE slash lines drawn through it, is bordered in ORANGE and which has the bold printed "T-1" and "T-2" in the middle of said tract.
REVERSED IN PART.
DENNIS, J., recused.
NOTES
[*] Judge John C. Boutall of the Court of Appeal, Fifth Circuit, was appointed to participate in place of Justice James L. Dennis, recused.