FOURNET, Chief Justice.
 

 We granted certiorari to the Court of Appeal, Second Circuit, to review its judgment affirming that of the district court in favor of plaintiffs
 
 [1]
 
 for the sum of $1,102.58, as reimbursement for one-eighth of the gas produced from a well drilled by the defendant, The Texas Company, under its lease from owners of an undivided seven-eighths mineral interest in a 636 acre tract of land in Red River Parish — title to the land and a one-eighth mineral interest therein having been acquired by plaintiffs’ ancestor in title; but rejecting the defendant’s claim that plaintiffs were responsible for their proportionate share of the expenses of drilling, equipping and operating the well. See, La. App., 73 So.2d 321.
 

 As observed by the author of the opinion in the Court of Appeal, there is no dispute as to the material facts. In 1944 Osborne J. Dykes was the owner of the 636 acre tract mentioned above; and on April 21 of that year, by proper deeds of conveyance duly executed, filed and recorded,' Dykes conveyed to each of his three sons (John A., James F., and Osborne J. Dykes, Jr.) an undivided one-fourth mineral interest in the said property. On August 7, 1945, Dykes sold several parcels, including the 636 acres, to Theodore L. Gray, reserving to himself “one-half of the minerals in and under and that may be produced” from the property conveyed, subject (in the case of the 636 acre tract) to the transfers of the mineral interests to his sons; this deed was promptly recorded. On August 8, 1945, the day following the sale, Dykes and his three sons executed an oil, gas and mineral lease to the defendant, which lease purported to cover the full mineral interest in the 636 acres. The plaintiffs
 
 [2]
 
 acquired Gray’s interest in the property here involved on February 28, 1950, and later in the same year Pugh T. Huckabay advised the defendant company, by letter dated September 25, 1950, that he and his co-owners claimed title to the land as well as title to a portion of the mineral interest “which we at this time believe to be one-half of one-fourth,” but no representation was made that their interest was not covered by the lease.
 
 [3]
 
 In September,
 
 *196
 
 1951, suit was filed by the Huckabays (plaintiffs) against Osborne J. Dykes in which a declaratory judgment was sought to fix the mineral interests of the parties with respect to the tracts of land conveyed by Dykes to Gray in 1945, on the ground that judicial aid was necessary to construe the “ambiguous mineral reservation.” This controversy was settled in March, 1952, by a compromise agreement wherein the Huckabays were recognized as owners of an undivided one-eighth of the minerals in the subject property. Meanwhile, on November 4, 1951, a well was drilled by the defendant and was completed as a gas producer at a cost of $110,150.59. This suit followed.
 

 The plaintiffs predicate their claim on the contention that the defendant was in bad faith in entering on the land and drilling the well; that in so doing it acted in total disregard of plaintiffs’ rights, and they (the plaintiffs) are therefore entitled to participate, according to their ownership, in the production without being responsible for their share of the expenses.
 

 The defendant, on the other hand, apparently conceding that the plaintiffs are entitled to one-eighth of the production, claims that inasmuch as it had an absolute right, under the laws and jurisprudence of this State, to go upon the land to drill for oil, gas or other minerals without permission of the plaintiffs, it is entitled to reimbursement of a proportionate share of the expenses of drilling the well, and the plaintiffs may share only in the
 
 net
 
 profits.
 

 Clearly, under the facts of this case, the defendant was not in bad faith, and the Court of Appeal aptly observed in its opinion that [73 So.2d 325] “this defendant, The Texas Company, is completely justified in its action in drilling, producing and marketing the natural gas recovered”; but we think the Court of Appeal was in error in its conclusion that the rights of the plaintiffs were prejudiced and damage resulted because “These plaintiffs, in effect, were caught in a ‘squeeze’, for they could neither undertake the substantial expenditures necessary to a recovery of their fractional interest in minerals, nor could they prevent the development by The Texas Company to their corresponding detriment and the depletion of their interest in the minerals. * * *
 
 »
 

 We fail to appreciate how the defendant’s action in doing something it had an absolute right to do — develop the property — could possibly prejudice the rights of the plaintiffs just because they were unable to undertake the substantial expenditures necessary to develop their fractional interest in the minerals.
 

 In the case of Starr-Davis Oil Co. v. Webber, 218 La. 231, 48 So.2d 906, 908, we rej ected the claim that the plaintiffs and defendants, who held fractional mineral interests in certain land, owned a right which was susceptible of partition, since “There was not a joint ownership of a single right but two absolute rights, independent of each
 
 *198
 
 other”, the only limitation being that-if minerals are found, the finder is entitled to take only his share; and on several occasions this Court has applied the equitable' rule
 
 [4]
 
 that where one co-owner (or co-lessee) has explored .and developed a field without the concurrence or assistance of the other, the former is bound to account to that other for his proportionate share of the proceeds less a proportionate share of the expenses. Martel v. Jennings-Heywood Oil Syndicate, 114 La. 351, 38 So. 253; Allies Oil Co. v. Ayers, 152 La. 19, 92 So. 720; Connette v. Wright, 154 La. 1081, 98 So. 674. While the right of an owner to refrain from exercising his right of ownership, if so minded, is absolute, LSA-Civil Code, Articles 491, 496, he nevertheless may not enjoy the profits without participating in the. expenses incurred in producing those profits, since to permit him to do so would violate the moral maxim of the law that no one ought to enrich himself at the.expense of another.
 

 Inasmuch as the plaintiffs are suing for a stated amount, asserted to be the value of their proportionate share of the gas produced through October, 1952, and the record abundantly shows that their pro rata share of the expenses incurred in drilling, equipping and operating the well to that date far exceeded the amount claimed ($1,102.58), their suit will have to be dismissed.
 

 For,.the reasons assigned, the judgments of the Court of Appeal, Second Circuit, and of the district court, are annulled and set aside; and it is now ordered, adjudged and decreed that the plaintiffs’ suit be dismissed, at their cost.
 

 HAMITER, J., dissents, he subscribing to the views expressed by the Court of Appeal.
 

 [1]
 

 . P. Lyndon Huckabay, Pugh T. Huckabay, Mrs. Verda McNaughton Huckabay, J. Philip Smith, Mrs. Yera Huckabay Smith; and Henry W. Bethard, Jr., and Henry W. Bethard III, members of the law partnership of Bethard
 
 &
 
 Bethard, who represent the plaintiffs heroin.
 

 [2]
 

 . With the exception of members of the law firm of Bethard & Bethard, who acquired an undivided one-fourth of one-eighth mineral interest by conveyance from the other plaintiffs on June 13, 1951.
 

 [3]
 

 .-In a title opinion prepared shortly thereafter by the defendant’s legal staff, the plaintiffs’ one-eighth mineral interest was duly noted, but, in view of the conclusion that the lease covered full surface, mineral and royalty interest, the recommended action was merely that the defendant obtain a declaration and division order from all claimants of mineral interests for the purpose of royalty payments.
 

 [4]
 

 . Article 21, LSA-Civil Code, provides: “In all civil matters, where there is no express' law, the judge is bound to proceed and decide according to equity. To ■ decide equitably, an appeal is to be made to natural law and reason, or received usages,, where positive law is silent.”