BOWES, Judge.
Great American Insurance Company instituted this suit against First Metropolitan Bank (n/k/a Hibernia National Bank) for the recovery of $30,933.89 plus interest which had been deposited in the name of Henry Smith and assigned or pledged to them, but released by the Bank to Smith notwithstanding receipt of prior notice of the pledge/assignment by Smith to Great American. First Metropolitan filed a third party petition against Smith alleging that Smith secured the release of the funds from First Metropolitan by wrongfully advising them that the passbook for the pledged/assigned account was lost, when in truth and fact he knew it was being held by Great American under the pledge/assignment. Judgment on the main demand was rendered in favor of Great American and against First Metropolitan in the amount of $33,763.33 (includes accrued earnings on the deposit) plus judicial interest from date of judicial demand.
No appeal was brought on the main demand. Smith devolutively appealed the judgment rendered against him on First Metropolitan’s third party demand. First Metropolitan has neither appealed, answered the appeal, nor filed briefs in this court.
In the trial court and here counsel for Smith contends Smith was authorized by Great American to withdraw the funds. Moreover, he reurges his exception of pre *188 scription which had been denied by the trial court.
The facts as we understand them are as follows: On April 10, 1974 Mid-Gulf Construction Company, Inc. was awarded the contract to build a courthouse and jail facility in Hahnville, La. Great American Insurance Company, as surety, executed both a “Labor and Material Payment Bond” and a “Performance Bond” on behalf of Mid-Gulf. As additional consideration for the issuance of the bond, Henry A. Smith, Jr., who was president of Mid-Gulf, executed a pledge/assignment of bank accounts to Great American. A notice given to Great American and signed by Smith did “assign, transfer, and set over to [Great American] all my right, title, and interest in and to all money deposited to my credit in First Metropolitan Bank as shown by Savings Account No. 0483-54-84-20 [his personal account]”.[1] On May 3,1974 First Metropolitan sent Great American a written acknowledgment of the foregoing notice and reported the balance of the account to be $30,933.89. Great American took possession of the account passbook at the time of the pledge/assignment and it remained in their possession until its introduction in the record at trial.
On January 2, 1976 Smith presented to First Metropolitan an affidavit that the account passbook had been lost, mislaid, or stolen.[2] First Metropolitan thereafter released the funds in the account to Smith. Notice of the release was not communicated to Great American. As a result of Mid-Gulf’s lack of performance on the construction project several suits were filed against Mid-Gulf and Great American. In July of 1981 Great American satisfied a $32,000.00 judgment after Mid-Gulf was called upon to pay and failed to do so. By letter dated November 11, 1981 Great American informed First Metropolitan that it still had custody of the passbook and inquired as to the status of the account. First Metropolitan replied that the funds had been released to Smith pursuant to a “lost passbook” affidavit and refused to pay Great American. The present litigation ensued.
Smith defended the third party demand of First Metropolitan on the basis that the assignment/pledge of the account was intended to be short term and that a Great American agent, Carl Radcliff, authorized him to secure the release of the funds through the “lost passbook” affidavit because Great American could not find the passbook. However, Radcliff testified he neither told Smith he could have the passbook back after a few months nor authorized Smith to secure the release of the funds by executing a “lost passbook” affidavit. Additionally, the collateral agreement executed by the parties indicates that the accounts were to be held by Great American until such time as the construction project was satisfactorily completed and accepted. An inter-office memo between executives of Great American in December of 1975 states Smith had made a *189 request to transfer the accounts from First Metropolitan to Louisiana National Bank in Baton Rouge, La.
Based on the testimony and exhibits introduced at trial the trial judge concluded that Smith failed to prove by a preponderance of evidence that Great American authorized him to submit the “lost passbook” affidavit and secure the release of the funds. In essence, the trial judge made a credibility call. Were this a case of first impression we might reach a different conclusion than did the trial judge. However, a reviewing court must give great weight to the conclusions of the trier of facts, and should not disturb reasonable evaluations of credibility and reasonable inferences of fact, even though other evaluations and inferences are as reasonable. Aleman v. Lionel F. Favret Co., Inc., 349 So.2d 262 (La.1977); Nailor on Behalf of Nailor v. International Harvester Co., 430 So.2d 784 (5th Cir.1983) writ denied 437 So.2d 1148 (La.1983). Where, as here, there is evidence in the record which furnishes a reasonable factual basis for the trial court’s finding, and that finding is not clearly wrong, we are not at liberty to disturb it. Arceneaux v. Domingue, 365 So.ld 1330 (La.1978).
Smith next contends that First Metropolitan’s third party demand against him sounds in tort (conversion) and as such was prescribed by the passage of one year from the date of withdrawal of the funds, or, alternatively, by the passage of one year from the date of First Metropolitan’s notification of Great American’s claim to the funds, and therefore the trial court committed reversible error in failing to rule that First Metropolitan’s action against Smith had prescribed.
Pretermitting the question of whether First Metropolitan’s action against Smith sounds in tort, contract,[3] or quasi-contract,[4] we note that even if the prescriptive period for delictual actions is applicable in the present case, First Metropolitan’s third party demand was timely filed. La. C.C. art. 3492 provides that delictual actions are subject to a liberative prescription of one year which commences to run from the date injury or damage is sustained.[5] In Rayne State Bank & Trust v. Nat. U. Fire Ins., 483 So.2d 987, 995-996 (La.1986) the court, in discussing the prescriptive period for a legal malpractice action by a bank against an attorney who prepared defective mortgages stated:
In Louisiana prescription does not begin to run until damage is sustained. The tort prescription provisions in former C.C. 3537 were reenacted without substantive change in 1984 as C.C. 3492. C.C. 3537 provided that the one year prescriptive period for delictual actions runs “from [the day] on which the injurious words, disturbance, or damage were sustained.”
Mere notice of a wrongful act will not suffice to commence the running of the prescriptive period. The reason is clear. In order for the prescriptive period to commence, the plaintiff must be able to state a cause of action — both a wrongful act and resultant damages. Because the damage must necessarily occur after the wrongful act, prescription runs from that point and not from the date of the wrongful act. See Owens v. Martin, 449 So.2d 448 (La.1984), reaffirming Jones v. Texas & Pacific Ry. Co., 125 La. 542, 51 So. 582 (1910). Thus, until damage was “sustained” by the bank, it had no cause of action, and prescription did not commence to run on the date the bank received notice of possibly fatal defects in the mortgages.
Damage was not sustained by the bank by virtue of the mere existence of de *190 fects in the mortgages. At this point, the possibility of damage to the bank was merely speculative, uncertain and contingent on the possibility of an attack on the validity of the mortgages by a third party, or on the possibility that the debtors would declare bankruptcy. In the event that neither of these contingencies occurred, and the debtors continued payment of their indebtedness, no harm at all would have resulted to the bank. The defects in the mortgages did not affect the principal obligations between the bank and the debtors; the debtors themselves could not have sought to avoid their obligations on the basis that the security agreement was defective. Such security agreements are basically devised to protect creditors against the claims of third parties; thus only where a third party attacks the validity of a security agreement does damage materialize.
Applying the rational of Rayne to the facts of the present case, it is apparent that damage was not sustained by First Metropolitan when it released the funds to Smith. Until Great American sued First Metropolitan to enforce a security interest in the released funds, the possibility of damage to First Metropolitan was speculative and not suspectible of ascertainment. Accordingly, the prescriptive period on First Metropolitan’s claim against Smith, if indeed the claim sounded in tort, commenced to run on the day Great American filed suit against First Metropolitan (October 7, 1982). As First Metropolitan sued Smith within one year of that date (November 16, 1982) any claim in tort had yet to prescribe.[6] Because we find that First Metropolitan’s third party demand is not barred by the running of the lesser prescriptive period of one year, we need not address the applicability of the ten year prescriptive period for contractual or quasi-contractual actions.[7]
Accordingly, the judgment of the trial court is affirmed in all respects.
AFFIRMED.

. The use of the word assignment in the form does not mandate a finding that the instrument was an assignment and not a pledge. Naquin v. American Bank, 347 So.2d 332 (4th Cir.1977). Smith also "Assigned” a savings account of $35,-415.85 on deposit with American Bank in Nor-co. This litigation does not concern the American Bank account.

. The by-laws of First Metropolitan governing savings deposits provided in part:
Article VII. The Pass Book shall be the voucher of the depositor, and the possession of the Pass Book shall be sufficient authority to the Bank to warrant any payment made and entered therein.
Article VIII. No deposit will be received unless accompanied by the Pass Book, and the Bank further reserves to itself the right to refuse at any time the payment of a check, draft, or withdrawal receipt, drawn on the Bank by a depositor, unless the Pass Book accompanies same.
Article IX. In all cases in which the whole amount is withdrawn, the book must be given up to the Bank.
Article X. In case any depositor shall lose his or her own book or the same shall be destroyed or fraudulently obtained from any depositor, immediate notice thereof must be given at the office of the Bank.
Article XI. After such notice is given, if a satisfactory explanation be given and a bond of indemnity, in such form as shall be approved by the Executive Committee be given to the Bank, the amount to the credit of the depositor in the books of the Bank will be paid to him or her, or a new book issued.

. The applicable prescriptive period governing contractual actions is ten years. La. C.C. art. 3499.

. The action for indemnity based upon implied or quasi-contract is properly characterized as an action or claim for unjust enrichment, which prescribes in ten years. See Slocum v. Daigre, 424 So.2d 1074 (3rd Cir.1982) writ denied 429 So.2d 128 (La.1983).

.Acts 1983, No. 173 § 1 eff. Jan. 1, 1984, reproducing the substance of former article 3536(1) and the second sentence of former article 3537(2).

. Even were we to consider Great American’s letter to First Metropolitan on November 11, 1981 as an attack on the validity of the release of the funds and hence "resultant damage" of Smith’s actions. First Metropolitan’s third party demand was not barred by prescription, for it was filed within ninety days of the date of service of Great American’s principal demand, and the third party demand was not barred by prescription of one year at the time the principal demand was filed. See La.C.C.P. art. 1067.

. We do note that the bank’s effort to establish a contractual right of indemnity failed because the indemnity agreement was not properly con-fected. (“First Metropolitan ‘agreed to protect and hold harmless’ said bank”).