**GRACE–CAJUN OIL CO. NO. 3, Plaintiff–Appellant,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, Defendant–Appellee.**

No. 88–4481.

United States Court of Appeals, Fifth Circuit.

Sept. 14, 1989.

Rehearing Denied Oct. 16, 1989.

As Amended Nov. 13, 1989.

Michael R. Graber, Lake Charles, La., for plaintiff-appellant.

R. Patrick Vance, Carl D. Rosenblum, Jones, Walker, New Orleans, La., for amicus curiae.

Michael H. Rubin, Kelly Wilkinson, Baton Rouge, La., for defendant-appellee.

Before POLITZ and JOLLY, Circuit Judges, and HUNTER,[*] District Judge.

POLITZ, Circuit Judge:

Grace–Cajun Oil Company No. 3 seeks to recover from MBank, formerly Mercantile National Bank at Dallas, a creditor holding a security interest in oil and gas production proceeds, a proportionate share of certain well drilling and completion costs. The district court granted MBank's motion for summary judgment and dismissed the complaint. For the reasons assigned we reverse and remand for further proceedings.

## Background

In February 1980 Delta Energy Resources, Inc. obtained an oil, gas, and mineral lease from Louisiana Farm and Livestock Company, Inc. (LF & L) covering land in Calcasieu Parish, Louisiana. Eight months later Delta executed an operating agreement with Grace–Cajun affecting all wells drilled on that lease. The operating agreement was not recorded in the public records. On March 10, 1981 Delta assigned to Grace–Cajun an undivided 31.36% interest in the LF & L lease. That assignment was recorded in the public records. Delta also assigned an undivided 14.41899% lease interest to a group of investors who were non-operators.

On May 28, 1981 Delta executed a note and loan agreement with MBank, refinancing its existing debt. Delta secured the note with an instrument entitled Collateral Mortgage and Assignment of Production, in which it pledged its share of production proceeds from wells on the LF & L lease. This instrument, which was made subject to the operating agreement, was recorded in the records of Calcasieu Parish. Delta subsequently defaulted on the loan.

Delta also failed to pay its share of well drilling and completion costs and its creditors filed protective liens. On December 23, 1983 Delta initiated a Chapter 11 bankruptcy proceeding. To avoid the effects of foreclosure on the liens Grace–Cajun paid

---

[*] District Judge of the Western District of Louisiana, sitting by designation.

Delta's share of the well costs. Production was obtained and the proceeds allocable to Delta's interest in the minerals have been paid regularly to MBank.

Grace–Cajun, a New York corporation doing business in Louisiana, filed suit against MBank, a national banking institution domiciled in Texas, for recovery of the well-drilling costs it had paid on Delta's behalf. Suit, initially filed in Louisiana state court, was removed by MBank to federal court. On motion of MBank the district court granted a summary judgment dismissal, finding that there were no material factual disputes and that Grace–Cajun had failed to state a claim against MBank. Grace–Cajun timely appealed.

### Analysis

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). Grace–Cajun contends that when MBank pursued its remedies under the security instrument, which was made subject to the operating agreement, it acquired the obligation to pay Delta's proportionate share of drilling and completion costs out of the proceeds received.

█ It is undisputed that Delta and Grace–Cajun are co-lessees of the LF & L lease and that Delta did not pay its share of the costs of drilling and completing the LF & L wells. Under Louisiana law a co-lessee is not entitled to share in the proceeds of production from an oil or gas well until he pays his share of the cost of drilling and completing the well. *Huckabay v. Texas Co.*, 227 La. 191, 78 So.2d 829 (1955);[1] *Willis v. International Oil & Gas Corp.*, 541 So.2d 332 (La.App.1989). This rule rests on the principle of unjust enrichment. Under Louisiana law, while the right of an owner to refrain from exercising the rights of ownership in such a situation is absolute, Civil Code arts. 491, 496,

the owner nevertheless may not enjoy the profits realized from such an oil and gas venture without participating in the expenses incurred in producing those profits. To allow otherwise would violate the moral maxim that no one ought to be enriched at the expense of another. *Huckabay*, 78 So.2d at 831.

It is manifest that Delta is not entitled to enjoy the proceeds of production from the LF & L wells without paying its share of drilling and completion costs. The question presented by this litigation may be simply stated: What are the parameters of MBank's right to share in the production proceeds vis-a-vis Grace–Cajun and the other non-operators?

The district court found that Delta, as lessee, granted MBank a security interest in the right to production from the lease free of encumbrances. It further found that the operating agreement between Grace–Cajun, Delta, and the other non-operators created only personal obligations. The court then reasoned that MBank's rights to the production proceeds as a secured creditor primed Grace–Cajun's claim for recovery of drilling costs, a claim which was viewed as that of an unsecured creditor. We do not agree.

█ The flaw in the district court's reasoning lies in its characterization of MBank's interest in the production proceeds. MBank's rights are derived solely from Delta's collateral mortgage and assignment of production. That document, listed in the loan agreement between Delta and MBank as a security instrument, declares that Delta assigns its interest in production to MBank "to secure the payment of the secured indebtedness." Article V.2(c) of the mortgage and assignment states:

> Without limiting the foregoing provisions of this Article V, the Mortgagor stipulates that this Article V is intended

---

**1.** The Louisiana Supreme Court stated in *Huckabay:*

> [O]n several occasions this court has applied the equitable rule that where one co-owner (or co-lessee) has explored and developed a field without the concurrence or assistance of

the other, the former is bound to account to that other for his proportionate share of the proceeds less a proportionate share of the expenses.

*Huckabay,* 78 So.2d at 831 (footnote omitted).

to grant to the holder a *security interest* in Mortgagor's interest in the Hydrocarbons to be extracted from or attributable to the Mortgaged Properties, and in and to the proceeds resulting from the sale thereof at the wellhead. (Emphasis added.)

Article VI further provides:

Sect. 6.1 Upon the full and final payment of the indebtedness secured hereby, this Act of Collateral Mortgage and Assignment of Production *shall be extinguished* and be of no further force and effect ... (Emphasis added.)

Sect. 6.7 This instrument is in all respects to be construed under the laws of the State of Louisiana, including but not limited to La.R.S. 31:203, *et seq.* as (i) a mortgage, hypothecation, pledge and confession of judgment by Mortgagor in favor of the Bank; and (ii) as an Assignment of Production in favor of the Bank, *to secure the payment of the principal and interest* of the Note and also to secure all attorney's fees, costs, charges, and the performance of all obligations of Mortgagor contained herein and in the Note. (Emphasis added.)

In determining the nature of a transaction the court will look to its substance, not merely to its descriptive title. *American Bank & Trust Co. v. Louisiana Savings Association*, 386 So.2d 96 (La.App.1980). Doing that we are persuaded that the nature of the transaction between MBank and Delta was that of a pledge. The language contained in the instrument does not purport to transfer title to the lease or the leased property to MBank; rather, it creates for the bank a security interest in Delta's share of the production proceeds from the LF & L wells. *Great American Insurance Co. v. Hibernia National Bank*, 506 So.2d 186 (La.App.1987) (use of word assignment in form does not mandate finding that the instrument was an assignment and not a pledge).

The parameters of MBank's security interest necessarily are cabined by Delta's interest in the property. The Louisiana Mineral Code, La.R.S. 31:204, provides that:

A mortgage of mineral rights may also provide for the pledge of minerals subsequently produced *to the extent of the mortgagor's interest therein* or of the proceeds accruing from the sale or other disposition thereof. (Emphasis added.)

This statutory provision makes abundantly clear that the owner of property cannot pledge any right greater than that owned. Should this *Erie* court need further direction from Louisiana law, there is more. Article 2 of the Mineral Code, La.R.S. 31:2, declares that its provisions are supplementary to the Louisiana Civil Code, which may be resorted to when needed. A reference to Civil Code article 3142 reveals that "[a] debtor may give in pledge whatever belongs to him. But with regard to those things in which he has an ownership which may be divested or which is subjected to incumbrance, he can not confer on the creditor, by the pledge, any further right than he had himself." *See also Stevenson v. Brown*, 32 La.Ann. 461 (La.1880); *Groner Apartments v. Controlled Building Systems*, 432 So.2d 1142, 1145 (La.App.), *cert. denied*, 438 So.2d 1106 (La.1983); *Guaranty Bank & Trust, Etc. v. Daniels*, 399 So.2d 790 (La.App.1981) (plaintiff could not by recording the pledge acquire any greater rights than defendant could lawfully convey to it); *First Guaranty Bank v. Alford*, 359 So.2d 700 (La.App.), *aff'd*, 366 So.2d 1299 (La.1978) (it is fundamental that one cannot pledge something he does not own).

Delta had the right to share in the proceeds of production from the LF & L lease, conditioned on its obligation to pay its proportionate part of well costs. The nature of this right is the product of Louisiana law, the instruments recorded in the public records assigning lease interests to Grace–Cajun and the other parties,[2] and the operating agreement.

Delta could transfer no greater right to MBank than it had. In the Collateral Mort-

---

**2.** We do not suggest that the right to receive production proceeds is automatically burdened with an obligation to pay costs of the well; the right and the obligation are completely separable. Whether the obligation follows the right is dependent on the genesis of the right.

gage and Assignment of Production, MBank took as its security interest only what Delta had—production proceeds encumbered by the obligation to pay well costs.[3]

When MBank exercised its rights under the Collateral Mortgage and Assignment of Production, it became obligated to pay Delta's proportionate share of the drilling and completion costs before sharing in the proceeds.[4] By paying Delta's share of the well costs, Grace–Cajun acquired a "right of prior claim" to the proceeds allocable to Delta's interest until those costs were recouped. *See Scurlock v. Getty Oil Company*, 344 So.2d 1134 (La.App.1977).

The district court erred in dismissing Grace–Cajun's claims. Summary judgment dismissal was inappropriate. The judgment of the district court is REVERSED and the matter is REMANDED for further proceedings.

---

3. Ordinarily, third parties are not bound by an unrecorded agreement, but that rule is not absolute; it admits of an exception. The unrecorded instrument may bind if the third party knows of it and knows that his transferor intends that he be bound by it. *Chevron U.S.A. v. Martin Exploration Co.*, 447 So.2d 469 (La.1984); *Stanley v. Orkin*, 360 So.2d 225 (La.App.1978). The evidence shows that MBank was aware of the operating agreement; in fact, it expressly took its security interest subject to its terms.

4. We do not hold, nor do we suggest that MBank assumed personal liability for Delta's drilling costs. There has long been a distinction under Louisiana law between property transactions made "subject to" obligations and those "assuming" such obligations. One assuming an obligation becomes personally liable. One acquiring subject to an obligation acquires a property interest burdened with the obligation but incurs no personal liability. *See, e.g., H.E.P. Development Corporation v. Mouton*, 256 So.2d 744 (La.App.1971), *cert. denied*, 258 La. 1126, 260 So.2d 377 (1972).

Furthermore, we reject the suggestion that by exercising its rights under the security agreement that MBank automatically became a co-owner of the property. Article 3179 of the Louisiana Civil Code specifically provides otherwise:

The creditor does not become owner of the pledged immovable by failure of payment at the stated time; any clause to the contrary is null, and in this case it is only lawful for him to sue his debtor before the court in order to obtain a sentence against him, and to cause the objects which have been put in his hands in pledge to be seized and sold.